**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Azharuddin Mohd,<br><br>                              Plaintiff,<br><br>            -v-<br><br>Department of Homeland Security, U.S. Citizenship and Immigration Services, Kristi Noem, *in her official capacity as Secretary of the Department of Homeland Security*, and Todd Lyons, *in his official capacity as Director of USCIS*,<br><br>                              Defendants. | 2:25-cv-2183<br>(NJC) |

## OPINION AND ORDER

NUSRAT J. CHOUDHURY, United States District Judge:

Plaintiff Azharuddin Mohd ("Mohd") brings this action against the Department of Homeland Security ("DHS"), the United States Citizenship and Immigration Services ("USCIS"), DHS Secretary Kristi Noem ("Noem" or "DHS Secretary"), and Acting USCIS Director Angelica Alfonso-Royals[1] ("Alfonso-Royals" or "USCIS Director") (collectively, "Defendants"). (Compl., ECF No. 1.) Mohd, a citizen of India and lawful resident in the United States, alleges that Defendants revoked his Student Exchange Visitor Information Systems ("SEVIS") record and F-1 nonimmigrant student status on the basis of his 2023 citation for a minor traffic violation, despite the fact that the relevant statutory provision, 8 C.F.R. § 214.1(g), only permits such revocation upon a "conviction . . . for a crime of violence for which a sentence of more than one year imprisonment may be imposed." Compl. ¶¶ 38–65. Mohd further alleges

---

[1] Todd Lyons was automatically substituted for Alfonso-Royals in this action when Alfonso-Royals became the Acting USCIS Director on May 25, 2025. Fed. R. Civ. P. 25(d) ("[W]hen a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending . . . [t]he officer's successor is automatically substituted as a party.").

that Defendants' revocation of his SEVIS record resulted in the revocation of his F-1 student visa by the United States Department of State (the "State Department"). (Compl. ¶¶ 38–65; ECF No. 20-2 (visa revocation document).) He brings claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2) ("Section 706(2)"), and the Due Process Clause of the Fifth Amendment to the United States Constitution, asserting that Defendants' decision to revoke his SEVIS record was: (1) "arbitrary, capricious, in an abuse of discretion, [and] otherwise not in accordance with law" under APA Section 706(2)(A), 5 U.S.C. § 706(2)(A); (2) "contrary to a constitutional right, power, privilege, or immunity" under APA Section 706(2)(B), 5 U.S.C. § 706(2)(B); (3) "in excess of [DHS's] statutory jurisdiction, authority, or limitation, or short of statutory right" under APA Section 706(2)(C), 5 U.S.C. § 706(2)(C); (4) "without observance of procedure required by law" under APA Section 706(2)(D), 5 U.S.C. § 706(2)(D); and (5) a violation of Mohd's Fifth Amendment due process rights.

Before the Court is a Motion for a Preliminary Injunction ("PI Motion"), in which Mohd seeks an order providing two forms of preliminary relief during the pendency of this action: (1) an order preliminarily enjoining Defendants "from terminating [Mohd's] records in [SEVIS] and his F-1 status"; and (2) an order preliminary "enjoining Defendants from directly or indirectly enforcing, implementing, or otherwise taking any action or imposing any legal consequences— including causing [Mohd's] visas to be revoked or detaining or removing [Mohd]" from the United States. (Mot. Prelim. Injunction ("PI Mot."); Proposed Order, ECF No. 2-3.)[2]

---

[2] As explained further below, the parties have represented that Mohd's SEVIS record and F-1 status have been restored. *See infra* at Discussion Section I. Additionally, at the July 1, 2025 hearing on the PI Motion, Mohd's counsel suggested that Mohd also seeks the reinstatement of his F-1 visa (distinct from his F-1 status and his SEVIS record). For the reasons explained below, *infra* at Discussion Section I, I cannot grant this relief on the current record.

For the reasons explained below, I grant the Motion.

## BACKGROUND

The following facts are taken from the Complaint (Compl.), the documents attached to the Complaint, and the declarations and factual exhibits submitted by the parties in connection with the PI Motion, as well as admissions and other factual representations made by the parties on the record in the July 1, 2025 hearing on the PI Motion. *See Nat'l Coalition on Black Civic Participation v. Wohl*, 498 F. Supp. 3d 457, 469 (S.D.N.Y. 2020) (holding that a court "need not accept as true the well-pleaded allegations in [the plaintiff's] complaint" on a motion for a preliminary injunction).[3]

## I.    Applicable Statutory and Regulatory Framework

At issue in this case are three items that nonimmigrant foreign citizens must have in order to lawfully enter and study in the United States: F-1 status, an F-1 visa, and a SEVIS record. I address each below.

### a.    F-1 Status

Section 1101(a) of the Immigration and Nationality Act ("INA") provides that foreign citizens may enroll in qualifying academic institutions, and reside in the United States in order to study at those institutions, as nonimmigrants with F-1 status. *See* 8 U.S.C. § 1101(a)(15)(F)(i); *see also* 8 C.F.R. § 214.1(a)(2) (establishing the nonimmigrant classification "F-1").[4] Individuals may remain in the United States for the "[d]uration of" their F-1 status, which continues while

---

[3] A full list of the declarations and exhibits submitted in connection with the present Motion is provided *infra* at Procedural History Section.

[4] The INA defines a "nonimmigrant" to include an individual who has "a residence in a foreign country which he has no intention of abandoning, who is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study." 8 U.S.C. § 1101(a)(15)(F)(i).

the individual is "pursuing a full course of study at an educational institution certified by [DHS's Student and Exchange Visitor Program] for attendance by foreign students" or "engaging in authorized practical training following completion of studies"—so-called "optional practical training." 8 C.F.R. § 214.2(f)(5)(i). Students engaged in optional practical training ordinarily must complete their training within a 14-month period following the completion of their studies. 8 C.F.R. § 214.2(f)(10)(ii)(A)(3). However, students who have completed a "science, technology, engineering, or mathematics (STEM) degree" may receive a 24-month extension of their optional practical training period, for a total of up to 38 months of optional practical training. 8 C.F.R. § 214.2(f)(10)(ii)(C).

Under the INA and its implementing regulations, an individual may lose F-1 status before completing their approved period of study and post-graduation optional practical training only under limited circumstances. *See* 8 C.F.R. § 214.1(e)–(g). An individual may fail to "maintain status" by: (1) failing to make "normal progress toward completing a course of study"; (2) engaging in "unauthorized employment"; (3) "willful[ly] fail[ing] to provide full and truthful information requested by DHS"; or (4) receiving a "conviction in a jurisdiction in the United States for a crime of violence for which a sentence of more than one year imprisonment may be imposed." 8 C.F.R. § 214.1(e)–(g); *see also Du v. U.S. Dep't of Homeland Security*, No. 25-cv-644, 2025 WL 1549098, at *1 (D. Conn. May 31, 2025). Additionally, the United States government may terminate F-1 status by: (1) revoking a previously granted waiver under 8 U.S.C § 1182(d)(3) or (4); (2) moving to convert the individual's F-1 status to permanent resident status through "a private bill"; or (3) providing notification in the Federal Register, "on the basis of national security, diplomatic, or public safety reasons." 8 C.F.R. § 214.1(d); *see also* 8 U.S.C. § 1101(d)(3)–(4) (providing requirements for granting temporary F-1 status). The

parties agree that the only provision authorizing F-1 status revocation at issue here is the "crime of violence" provision, 8 C.F.R. § 214.1(g) ("Section 214.1(g)"). (*See* Compl. ¶¶ 34–36; Opp'n PI Mot. at 7, ECF No. 18.)

      b.  <u>F-1 Visa</u>

Separate from F-1 status is the F-1 visa itself, which is the physical document permitting an individual with F-1 status to enter the United States from abroad.[5] Although DHS and USCIS manage the grant and maintenance of F-1 *status*, the State Department is responsible for issuing and revoking F-1 *visas*. 8 C.F.R. § 214.2(f) (providing the criteria that DHS applies to determine whether to grant F-1 status); 22 C.F.R. § 41.111(a) (providing that consular officers and certain other State Department officials may issue nonimmigrant visas); 22 C.F.R. § 41.122(b)(2) (providing that visas may be revoked by "[a] consular officer, the Secretary [of State], or a [State] Department official to whom the Secretary [of State] has delegated this authority"). An individual whose F-1 visa is revoked can still lawfully remain in the United States if they maintain F-1 status; however, if that individual were to leave the country, they would not be able to return without a new or reinstated F-1 visa. *Du*, 2025 WL 1549098, at *2.[6]

---

[5] *See* Students and Employment, USCIS, https://www.uscis.gov/working-in-the-united-states/students-and-exchange-visitors/students-and-employment (last visited July 28, 2025); Maintaining Status, https://studyinthestates.dhs.gov/students/maintaining-status (last visited July 28, 2025).

[6] *See also Hinge v. Lyons*, No. 25-cv-1097, 2025 WL 1134966, at *4 (D.D.C. Apr. 15, 2025) ("The defendant clarified that the plaintiff only needed an F-1 visa to lawfully enter the United States; then, in order to remain in the United States lawfully, he needs an I-94 that establishes the permitted duration of his stay."); Student Visa vs. Student Status: What is the Difference?, Dep't of Homeland Security, https://studyinthestates.dhs.gov/2016/01/student-visa-vs-student-status-what-difference ("A student visa is a travel document you receive from a U.S. consulate or embassy before you enter the United States. Your student status is what you must maintain after you are granted entrance into the United States. . . . Once you are admitted into the United States,

c.  SEVIS Record

SEVIS is DHS's record-keeping system for tracking and monitoring the compliance of individuals with F-1 status. 8 C.F.R. § 214.3. Schools must issue the forms showing proof of F-1 status—known as "Form I-20s"—on SEVIS. 8 C.F.R. § 214.2(f)(1)(iii). According to DHS, "a terminated . . . [SEVIS] record could indicate that the nonimmigrant no longer maintains F[-1] . . . status."[7]

**II.    Mohd's Factual Allegations**

Mohd is a citizen of India who currently resides in Uniondale, New York. (Compl. ¶ 9.) Around November 18, 2021, Mohd was granted an F-1 visa to study at Missouri State University. (Compl. ¶ 29; Mohd Visa, ECF No. 1-2 at 2.) Accordingly, Mohd had valid F-1 status as of November 18, 2021. (Compl. ¶ 1.) In May 2023, Mohd graduated from Missouri State University with a Master's of Science in Project Management, and since then he has been working consistently in the United States—first through the program authorizing F-1 status holders to complete 14 months of optional practical training following graduation, and subsequently through the program authorizing F-1 status holders with STEM degrees to receive a 24-month extension of their optional practical training period. Hr'g Tr. 50:20–23; Compl. ¶¶ 32–33; Mohd Employment Authorization Card, ECF No. 1-2 at 13; *see* 8 C.F.R. § 214.2(f)(10)(ii)(C). Most recently, Mohd has been employed at Fast Track Electric Corporation. (Compl. ¶ 33.)

---

your visa may expire. However, you may remain in the country . . . as long as you maintain your status.") (last visited July 28, 2025).

[7] SEVIS Help Hub, Dep't of Homeland Security, https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student (last visited July 28, 2025).

On July 15, 2023, while driving in North Richland, Texas, Mohd was pulled over by a police officer for "stopp[ing] past the stop line" at a red light. (Police Report at 2, ECF No. 1-2 at 4–11.)[8] Suspecting that Mohd was intoxicated, the police officer took Mohd to the police station and conducted a breathalyzer test, which revealed that Mohd was not, in fact, intoxicated. (*Id.*) The officer cited Mohd for failing to stop at a stop line in violation of Texas Transportation Code § 544.07. (Compl. ¶ 30; Police Report at 8.) Mohd pled guilty and paid a $235.00 fine. (Compl. ¶ 30–31; Police Report at 8.)

On April 9, 2025, Mohd received an email from Missouri State University stating:

> I regret to inform you that our records show your SEVIS record has been terminated and your visa revoked by DHS for the following:
> "TERMINATION REASON: **OTHER – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated."** (as reflected in your SEVIS record)
> You will need to stop working immediately and begin making plans to depart the U.S. immediately. You should also complete and submit the final self-evaluation (on the I-983) so we can upload it to your record.
> If you have any questions, please let us know.

(SEVIS Termination Email, ECF No. 1-2 at 15 (emphasis in original).) Mohd asserts that he has no criminal record, and Defendants do not dispute this assertion. (Compl. ¶ 36; Criminal Records Check, ECF No. 1-1 at 17–19; *see generally* Opp'n PI Mot., ECF No. 18.) Significant to this PI Motion, the parties agree that the State Department revoked Mohd's F-1 visa on or around April 14, 2025, approximately five days *after* DHS revoked his SEVIS record and terminated his F-1 status. (Visa Revocation Screenshot, ECF No. 20-2; *see* Hr'g Tr. 33:4–8, 53:22–54:3.)

---

[8] At the July 1, 2025 hearing on the PI Motion, Mohd's counsel stated that Mohd stopped in the middle of an intersection "for the purposes of making sure he didn't hit a car that did run a red light." (Hr'g Tr. 18:13–20.) The specific facts surrounding Mohd's arrest and traffic violation charge are immaterial to the PI Motion, however, since, as explained further below, the parties agree that the traffic violation was not a "conviction" for a "crime of violence" with a maximum statutory penalty of over one year, as required by Section 214.1(g) in order for DHS to revoke Mohd's F-1 status. *See infra* Discussion Section at II.

The Complaint alleges that, as a result of the termination of his SEVIS record, Mohd "has lost the ability to work at his current job, lost his ability to work at or find any new work to support himself and his wife, suffers from severe emotional distress, cannot afford . . . shelter, food, and other expenses, and has no outside means of financial security to ensure his well-being." (*Id.* ¶ 37.)[9] The Complaint further alleges that "his entire career trajectory at risk as all of his time, investment, and money has been devoted to building a career in the United States." (*Id.*) Additionally, as a result of the revocation of his F-1 visa, Mohd's wife in India cannot receive an F-2 derivative visa to visit him in the United States and, if Mohd traveled outside the United States to visit her, he would not be able to return. (*See* Reply Supp. Mot. Dismiss at 2, 4, ECF No. 20; Hr'g Tr. 10:22–24 ("And because he's on an F[-]1 visa, he cannot go see [his wife], nor can she come to see him because he can't apply for a F[-]2 visa for her.").)

On April 19, 2025, Defendants restored Mohd's SEVIS record and F-1 status. (Hr'g Tr. 47:25–48:2.) Defendants' counsel represents that Defendants have "no intention" of revoking Mohd's SEVIS record on the basis of a criminal records check again. (*Id.* 41:21–24.) While Mohd's SEVIS record and F-1 status have been restored, his F-1 visa remains revoked. (*Id.* 9:21–25.)

### III.    Factual Developments Following the Commencement of this Action

In opposition to the PI Motion, Defendants filed declarations by Michelle Young, USCIS Associate and Portfolio Director with the Service Center Operations Student, Appeals, Family & Employment Portfolio ("Young Declaration") and Andre Watson, Senior Official within the National Security Division for Homeland Security Investigations ("Watson Declaration").

---

[9] Excerpts from the Complaint and the parties' submissions are reproduced here exactly as they appear in the original documents. The numerous errors in spelling, punctuation or grammar in the parties' submissions will not be corrected or noted.

(Young Decl., ECF No. 18-2; Watson Decl., ECF No. 18-3.) Both declarations are imprecisely drafted, and Defendants' counsel confirmed on the record at the July 1, 2025 hearing on the PI Motion that both are form declarations that Defendants have submitted to oppose requests for preliminary relief in numerous lawsuits filed throughout the country by nonimmigrant students challenging the revocation of SEVIS records on the same or similar bases as those alleged here. Hr'g Tr. 25:17–10, 52:24–53:7; *see, e.g.*, *Du*, 2025 WL 1549098, at *2 (citing Young Declaration and Watson Declaration); *Parra Rodriguez v. Noem*, No. 25-cv-616, 2025 WL 1284722, at *9 (D. Conn. May 1, 2025) (citing Watson Declaration). Both declarations fail to address Mohd specifically, instead referring only to "an F-1 nonimmigrant" and "plaintiff(s)" generally. (Young Decl. ¶¶ 4–11; Watson Decl. ¶¶ 5–8.) Defendants' counsel specifically confirmed at the PI Motion hearing that Watson did not conduct any research to determine the specific reason for Mohd's SEVIS revocation. (Hr'g Tr. 53:8–11.)

      I summarize both declarations below.

      a.  <u>Young Declaration</u>

      According to Young, SEVIS is maintained by Immigration & Customs Enforcement ("ICE"), and DHS uses SEVIS to maintain information on nonimmigrant students who are in the United States on F-1 visas. (Young Decl. ¶ 3.) USCIS conducts security checks on individuals applying for immigration benefits, including requests for optional practical training authorization. (*Id.* ¶ 5.) Young attests, "If while adjudicating an immigration benefit request that includes a change of status and/or extension of stay request, USCIS finds that an F-1 nonimmigrant has violated or otherwise failed to maintain his or her nonimmigrant status, the change of status or extension of stay request, as applicable, would be denied and the F-1 nonimmigrant would begin to accrue unlawful presence the following day." (*Id.* ¶ 9.) If, on the

other hand, "while adjudicating an immigration benefit request, USCIS finds that an F-1 nonimmigrant's SEVIS record was terminated and then reactivated by ICE, USCIS would continue processing the benefit request according to all applicable laws, regulations, policies, and procedures." (*Id.* ¶ 11.)[10]

Young attests, "USCIS does not equate SEVIS record termination with termination of an alien's F-1 nonimmigrant status. Additionally, USCIS does not equate SEVIS record termination with adjudication of an immigration benefit." (*Id.* ¶ 7.)[11] Accordingly, "[t]he SEVIS record termination and reactivation would not, per se, have a negative impact on the benefit request's adjudication." (*Id.* ¶ 11.)

Young also attests that, on or around April 10, 2025, ICE terminated the SEVIS records of "certain F-1 nonimmigrants"—although Young does not attest specifically that ICE terminated Mohd's SEVIS record on this date. (*Id.* ¶ 6.)[12]

   b. <u>Watson Declaration</u>

---

[10] Neither the Young Declaration nor any other evidentiary submission in the record explains the relevance of these attestations. In particular, it does not appear that any of the Defendants terminated Mohd's SEVIS record while "adjudicating an immigration benefit," since Mohd received his 24-month optional practical training extension on July 19, 2024, approximately nine months before his SEVIS record termination. (Compl. ¶ 32; Mohd Employment Authorization Card, ECF No. 1-2 at 13.)

[11] Young's claim that "USCIS does not equate SEVIS record termination with termination of an alien's F-1 nonimmigrant status" is not credible and is squarely contradicted by the record. The April 9, 2025 email from Missouri State University informed Mohd that his SEVIS record was terminated *and* instructed him to stop working, underscoring that the revocation of Mohd's SEVIS record jeopardized his F-1 status, which was required for him to be able to work. *See* 8 U.S.C. § 1101(a)(15)(F)(i); 8 C.F.R. § 214.2(f)(10)(ii)(C). Moreover, at the PI Motion hearing, Defendants' counsel confirmed the Court's understanding that, while a SEVIS record and F-1 status are distinct, "a SEVIS record only exists if an individual has F-1 status." Hr'g Tr. 52:20–23; *see also Du*, 2025 WL 1549098, at *2.

[12] As noted above, Missouri State University informed Mohd via email on April 9, 2025 that his SEVIS record had been revoked.

In his declaration, Watson makes numerous attestations. First, he attests that, "[b]eginning in March of 2025, ICE reviewed and terminated numerous SEVIS records due to information provided by the U.S. Department of State and criminal databases." (Watson Decl. ¶ 4.) Second, he attests that "ICE has re-activated SEVIS records for plaintiff(s) *who met the parameters above*" and that the re-activation is "retroactive" such that there is "no gap in the plaintiff(s)' SEVIS record." (*Id.* ¶¶ 5, 7 (emphasis added).) Watson does not explain, however, what "parameters above" he is referencing. Nor does he specifically identify any parameters. (*See id.*) Indeed, the portions of the declaration that appear prior to this reference to "parameters" largely discuss Watson's professional background and the general purpose of the SEVIS system, not any criteria for maintaining a SEVIS record or what type of information from the State Department or "criminal databases" would lead ICE to terminate a SEVIS record. (*Id.* ¶¶ 1–4.) Further, at the PI Motion hearing, Defendants' counsel was likewise unable to specifically identify any parameters, beyond "the parameters with regard to the check in the criminal database" generally. (*See* Hr'g Tr. 54:4–11.)[13] Third, Watson attests that "ICE has no plans under its *new* SEVIS policy to re-terminate the plaintiff(s) SEVIS record based solely on the NCIC record that led to its initial termination." (*Id.* ¶ 7 (emphasis added).)[14] Watson does not, however, explain the nature of the previous SEVIS policy that was replaced by the referenced "new" policy. Fourth, Watson attests, "For plaintiff(s) who were or are currently engaged in Optional Practical Training (OPT) where SEVP also edited the SEVIS record to change the OPT

---

[13] The hearing transcript incorrectly quotes the Court and the parties as discussing "perimeters" instead of "parameters."

[14] Nowhere in Defendants' submissions do they define "NCIC." Based on the context in which Watson uses the term in his declaration, I understand Watson to be referring to the National Crime Information Center, a computerized index intended to facilitate the exchange of information between criminal justice agencies.

employment authorization end date, the record has been reset to the end date set forth in the alien's SEVIS record before its termination." (*Id.* ¶ 8.)

## PROCEDURAL HISTORY

Mohd filed the Complaint and the PI Motion on April 18, 2025. (Compl.) Attached as exhibits to the Complaint are the following documents:

(1) Mohd's F-1 visa (Mohd F-1 Visa, ECF No. 1-1 at 2);
(2) the police report and citation relating to Mohd's 2023 traffic violation (Police Report, ECF No. 1-1 at 4–11);
(3) Mohd's employment authorization card (Mohd Employment Card, ECF No. 1-1 at 13);
(4) the April 9, 2025 email from Missouri State University notifying Mohd that his SEVIS record was terminated (SEVIS Termination Email, ECF No. 1-1 at 15); and
(5) an April 10, 2025 consumer records check, indicating that Mohd has no criminal history (Criminal Records Check, ECF No. 1-1 at 17–19).

Mohd attached to the PI Motion a supporting memorandum, a declaration by his counsel Michael J. DeRienzo, and a Motion for a Temporary Restraining Order ("TRO Motion") pending resolution of preliminary injunction. (PI Mot.; Mem. Supp. PI Mot. ("Mem."), ECF No. 2; DeRienzo First Decl., ECF No. 2-1; PI Mot. at 2.)

On April 19, 2025, District Judge Pamela K. Chen, to whom the TRO Motion was assigned on an emergency basis, issued the requested Temporary Restraining Order, which provides, in relevant part: "the [D]efendant[s] are temporarily restrained and enjoined from terminating [Mohd's] records in the Student and Exchange Visitor Information System ('SEVIS') and his F-1 student status" and "from directly or indirectly enforcing, implementing, or otherwise taking any action or imposing any legal consequences—including causing [Mohd's] visas to be revoked or detaining or removing [Mohd]" pending the outcome of the PI Motion. (TRO at 1–2, ECF No. 5.) The Temporary Restraining Order also set a hearing on the PI Motion for April 22, 2025. (*Id.* at 2.)

On April 21, 2025, this case was transferred to the Long Island Division of the Eastern District of New York based on Mohd's residence and was assigned to my docket. (Elec. Notice, Apr. 21, 2025.) On the same day, I issued an order adjourning the April 22, 2025 hearing, setting a schedule for all briefing on the PI Motion to be completed by April 28, 2025, and scheduling a hearing on the PI Motion for April 29, 2025. (Elec. Order, Apr. 21, 2025.)

On April 22, 2025, the parties jointly requested an extension of the briefing schedule and an adjournment of the hearing. (ECF No. 13.) Following a status conference with the parties on April 23, 2025, I extended the briefing schedule by approximately four weeks, as jointly requested by the parties, and scheduled a hearing on the PI Motion for May 21, 2025. (Min. Entry, Apr. 23, 2025.)

On May 15, 2025, Defendants filed a letter, with Mohd's consent, seeking an adjournment of the briefing schedule and hearing in light of the parties' ongoing efforts to resolve this matter out-of-court. (ECF No. 15.) I granted the adjournment on May 16, 2025 and ordered the parties to file a status letter by May 23, 2025 to inform the Court whether the matter had resolved or jointly proposing a schedule for briefing the remaining submissions on the PI Motion. (Elec. Order, May 16, 2025.) The parties timely filed a joint letter advising the Court that they were unable to resolve this matter and proposing a briefing schedule, which the Court so ordered. (ECF No. 16; *see also* Elec. Order, May 24, 2025 (granting proposed briefing schedule request).)

Pursuant to that briefing schedule, Defendants filed a memorandum in opposition to the PI Motion on June 6, 2025 (Opp'n PI Mot. ("Opp'n"), ECF No. 18), along with declarations by the following individuals: (1) Diane C. Leonardo, Assistant United States Attorney and counsel to Defendants in this case ("Leonardo Declaration"); (2) Michelle Young, USCIS Associate and

13

Portfolio Director with the Service Center Operations Student, Appeals, Family & Employment Portfolio ("Young Declaration"); and (3) Andre Watson, Senior Official within the National Security Division for Homeland Security Investigations ("Watson Declaration"). (Leonardo Decl., ECF No. 18-1; Young Decl., ECF No. 18-2; Watson Decl., ECF No. 18-3.)

On June 18, 2025, Mohd filed a reply memorandum (Reply Supp. PI Mot. ("Reply"), ECF No. 20) and a declaration by Mohd's counsel (DeRienzo Second Decl., ECF No. 20-1), attaching as exhibits a June 18, 2025 screenshot showing that Mohd's visa remains revoked (Visa Revocation Screenshot, DeRienzo Second Decl. Ex. A, ECF No. 20-2) and an April 25, 2025 Washington Post article titled "DHS Reinstates Foreign Students After Court Losses Pile" (Washington Post Article, DeRienzo Second Decl. Ex. B, ECF No. 20-3).

On July 1, 2025, the Court held a hearing on the PI Motion. (*See* Min. Entry, July 1, 2025; Hr'g Tr.)[15]

## LEGAL STANDARD

The Second Circuit has long established that a party seeking a preliminary injunction must show three things: (1) irreparable harm in the absence of an injunction pending resolution of the action, (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party, and (3) that a preliminary injunction is in the public interest. *See N. Am. Soccer League, LLC v. U.S. Soccer Fed'n*, 883

---

[15] At the hearing, Defendants referenced, but did not file or otherwise put on the record, a May 22, 2025 letter from ICE to Mohd. (Hr'g Tr. 26:2–10.) I do not consider this letter, since it was not provided to me. In any event, Defendants' counsel represented at the hearing that the letter contains information already in the record—specifically, the fact that Mohd's SEVIS record was reinstated retroactively so there was no gap in his F-1 status—and thus it does not include any information that would change the outcome of this PI Motion. (*Id.* 31:18–32:4; *id.* 32:6–8 ("THE COURT: Is there any new information in this letter? [DEFENDANTS' COUNSEL]: I don't believe so, Your Honor.").)

F.3d 32, 37 (2d Cir. 2018). It has made clear that when a party seeks "mandatory" rather than "prohibitory" preliminary relief, "the likelihood-of-success and irreparable-harm requirements become more demanding still, requiring that the plaintiff show a *clear or substantial* likelihood of success on the merits and make a *strong showing* of irreparable harm." *Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, 96 F.4th 351, 356 (2d Cir. 2024) (citing *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015)) (emphasis in original).

A mandatory preliminary injunction typically requires the non-movant to take some affirmative action to change the status quo, whereas a prohibitory preliminary injunction typically requires the non-movant to either refrain from taking action to preserve the status quo or take action to return to the status quo prior to the dispute. *Id.* Determining whether the requested preliminary relief is mandatory or prohibitory "is sometimes unclear":

> In borderline cases, essentially identical injunctions can be phrased either in mandatory or prohibitory terms. We have therefore explained that [p]rohibitory injunctions maintain the status quo pending resolution of the case; mandatory injunctions alter it. In this context, the status quo is really the status quo *ante* – that is, *the last actual, peaceable[,] uncontested status which preceded the pending controversy*.

*Id.* (citing *N. Am. Soccer League*, 883 F.3d at 36 n.4, 37 n.5) (emphasis added).

Mohd claims that he seeks a prohibitory injunction subject to the lower standard, since he seeks to "maintain the status quo ante." (Mem. at 2 (citing *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985).) Defendants claim that Mohd seeks a mandatory injunction because the requested injunction will "alter the status quo." (Opp'n at 9 (citing *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013).) Defendants also argue that the higher "substantial likelihood of success on the merits" standard applies because an injunction here

would "affect government action taken in the public interest pursuant to a statutory or regulatory scheme." (Opp'n at 9 (citing *Sussman v. Crawford*, 488 F.3d 136, 140 (2d Cir. 2007) ("[Where] the moving party seeks a preliminary injunction that will affect government action taken in the public interest pursuant to a statutory or regulatory scheme, the injunction should be granted only if the moving party meets the more rigorous likelihood-of-success standard.").).)

Here, Mohd seeks a prohibitory injunction because "the last actual, peaceable[,] uncontested status which preceded the pending controversy" was *before* Mohd's SEVIS record was terminated, when Mohd had a valid record in SEVIS. *See Daileader*, 96 F.4th at 356. Thus, the requested preliminary injunction—which would, in part, preliminarily enjoin Defendants "from terminating [Mohd's] records in [SEVIS] and his F-1 student status" (Mot. at 1)—would maintain that status quo ante pending resolution of this action.

Defendants' argument at the PI Motion hearing that the requested relief would "have the government change something" misunderstands the law. (Hr'g Tr. 39:7–10.) The relevant inquiry is not whether the preliminary injunction would require a party to do something (as opposed to refrain from doing something); rather, the relevant inquiry is whether the injunction would return the parties to the closest possible approximation of the parties' positions before the disputed action occurred. *See Mastrio v. Sebelius*, 768 F.3d 116, 120–21 (2d Cir. 2014) ("Preserving the status quo is not confined to ordering the parties to do nothing. It may require parties to take action: To preserve the status quo a court may require the parties to act or to refrain from acting."); *see also United States v. Bedford Assocs.*, 618 F.2d 904, 917 (2d Cir. 1980) ("[T]here is no question that the district court has broad discretion to fashion such a preliminary injunction as may best approximate past positions in the light of the basic rights of the parties."). Defendants' position ignores the instruction from *Daileader* that a prohibitory

16

injunction "maintains . . . the status quo *ante*—that is, the last actual, peaceable[,] uncontested status which preceded the pending controversy." 96 F.4th at 356.

Defendants' argument that the "substantial likelihood of success on the merits" standard nevertheless applies because the requested preliminary relief would "affect government action taken in the public interest pursuant to a statutory or regulatory scheme" is unavailing. *See Sussman*, 488 F.3d at 140. Unlike in other cases in which the Second Circuit has held that the more rigorous standard applies, Defendants have made no showing that their action here— terminating Mohd's SEVIS record and revoking his F-1 status—was "in the public interest pursuant to a statutory or regulatory scheme," in particular because Defendants provide no public interest justification for their actions in their written or oral submissions. *See* Opp'n at 8–14 (failing to address the public interest prong of the preliminary injunction analysis); Hr'g Tr. 46:10–23; *cf. Sussman*, 488 F.3d at 139 (applying higher standard where West Point blocked on-campus protest because it would "detract from the good order, discipline, security, moral, or loyalty of the Soldiers"). When questioned at the PI Motion hearing for the basis for Defendants' contention that "the government action here was taken in the public interest pursuant to a statutory [or] regulatory scheme," Defendants' counsel responded, "I'm not prepared to answer that." (Hr'g Tr. 46:10–23.) Indeed, Defendants cannot even point to a specific policy pursuant to which they terminated Mohd's SEVIS and revoked his F-1 status, much less a public interest goal purportedly served by those actions. At the hearing, Defendants conceded: "Your Honor, I don't think there was any specific policy." (Hr'g Tr. 26:21–22.) Accordingly, I follow the other district courts in this Circuit that have addressed this same issue and apply the Second Circuit's standard for granting a prohibitory injunction, which requires either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring

the moving party. *See Du*, 2025 WL 1549098, at *8 (applying lower "prohibitory injunction" standard); *Parra Rodriguez,* 2025 WL 1284722, at *4 (same).[16]

## DISCUSSION

In his opening brief, Mohd argues that, in the absence of a preliminary injunction, he will suffer irreparable harm in the form of lost employment and an inability to support himself and his family. (Mem. at 2–3; *id.* at 7 ("Mr. Mohd cannot live as he has been denied any ability to work, take care of himself, his family, or his bills, and has no outside financial assistance.").) He argues that he is likely to succeed on the merits of his APA claim because Defendants' "actions are in direct conflict with their own regulations." (Mem. at 4–5.)[17] Finally, Mohd argues that the balance of hardships and the public interest favor him because, "[a]t worst, Defendants' have to admit they erred and reinstate Mr. Mohd back to his previous status," while Mohd "is facing no work, deportation, the inability to provide for himself or his family, and well as the mental and physical hardships with what he is going through." (Mem. at 6–7.)

---

[16] Even if the higher "substantial likelihood of success on the merits" standard applies to the PI Motion, it is easily met on the record before the Court for all of the reasons discussed in this Opinion, including that Defendants concede that Defendants lacked any statutory or regulatory basis to terminate Mohd's SEVIS record and revoke his F-1 status, in violation of APA Section 706(2)(A). (*See* Hr'g Tr. 27:22 – 25 ("[DEFENDANTS' COUNSEL]: I agree. He probably should not have been terminated and his SEVIS records should not have been terminated for [his traffic violation]."); *id.* 28:25–29:5 ("THE COURT: So there is factual material here in the record before me on the PI that the government did not follow its own regulation in terminating Mr. Mohd's SEVIS. Do you concede that? [DEFENDANTS' COUNSEL]: You Honor, I believe that's correct.").

[17] In his opening brief, Mohd argues that he is likely to succeed on the merits of his due process and multiple APA claims. However, at the PI Motion hearing, Mohd's counsel clarified that Mohd seeks a preliminary injunction only on the basis of his APA Section 702(6)(A) "arbitrary and capricious" claim. (Hr'g Tr. 20:25–21:2 ("THE COURT: Okay. So you're moving for the PI based on the APA claim, not the due process claim? [PLAINTIFF'S COUNSEL]: Yes.").)

18

In opposition, Defendants do not address the likelihood of success on the merits, the balance of hardships, or public interest prongs of the preliminary injunction analysis. Instead, Defendants focus *solely* on the requirement that Mohd demonstrate irreparable harm in order to secure a preliminary injunction. Defendants argue that Mohd cannot show irreparable harm because his "SEVIS record has been reactivated, and under ICE has no plans under its new SEVIS policy to 're-terminate the plaintiff(s) SEVIS record based solely on the NCIC record that led to its initial termination.'" (Opp'n at 11 (citing Watson Decl. ¶ 6).) On this point, they assert that Mohd was only unable to work for a short period of time and that ICE's reactivation of Mohd's SEVIS record restored his optional practical training authorization period retroactively, which means that there has been no gap in his F-1 status. (Opp'n at 11 (citing Watson Decl. ¶ 8).) Thus, according to Defendants, Mohd's "lack of employment [] is no longer an issue." (Opp'n at 11.) Although the PI Motion does not seek an injunction restoring Mohd's F-1 visa, Defendants argue that F-1 visa issuance and revocation (distinct from F-1 status or SEVIS record issuance and revocation) are within the purview of the State Department, which is not a party to this action, and that, regardless, the State Department's decision to grant or revoke a visa is not reviewable by this Court. (Opp'n at 13.)

Although the PI Motion does not seek reinstatement of his F-1 visa, on reply, Mohd raises his revoked F-1 visa as part of the irreparable harm resulting from Defendants' unlawful termination of his SEVIS and F-1 status. He argues that the irreparable harm from that conduct goes beyond employment because, although DHS has reinstated Mohd's SEVIS record after having terminated it on April 9, 2025 without explanation, his F-1 visa remains revoked, which affects his "ability to be with his wife or visit his wife in India." (Reply at 2.) Further, he agrees that the State Department can revoke a visa at any time "for what [the Secretary of State] deems

to be good and sufficient cause," but argues that "good and sufficient cause" does not exist here, given that Defendants clearly acted in defiance of their statutory authority in terminating his SEVIS record and revocation of his F-1 status. (Reply at 3–4.) Mohd's reply brief does not address whether I have jurisdiction to review the State Department's revocation of a visa without "good and sufficient cause" or how I could grant this requested relief where, as here, the State Department is not a party to the suit.

At the July 1, 2025 PI Motion hearing, the parties confirmed that Defendants have reinstated Mohd's SEVIS record and F-1 status, but that his F-1 visa remains revoked. (Hr'g Tr. 9:21–25.) Nevertheless, counsel for Mohd confirmed that Mohd still seeks the relief sought in the PI Motion: (1) an order preliminarily enjoining Defendants from terminating Mohd's SEVIS records and F-1 status, and (2) an order preliminary enjoining Defendants from directly or indirectly enforcing, implementing, or otherwise taking any action or imposing any legal consequences—including causing Plaintiff's visas to be revoked or detaining or removing Mohd from the United States. (Hr'g Tr. 55:15–57:10.)

As an initial matter, I note that district courts throughout the country have ruled on preliminary injunction motions in numerous cases bringing the same or similar claims following DHS's apparent widespread revocation of the SEVIS records and F-1 status of many individuals without explanation.[18] The specific facts of these cases vary somewhat from the facts of this

---

[18] *See Doe No. 1 v. Noem*, No. 25-cv-1962, 2025 WL 1582460 (E.D. Pa. June 4, 2025) (granting TRO); *Du v. U.S. Dep't of Homeland Security*, No. 25-cv-644, 2025 WL 1549098 (D. Conn. May 31, 2025) (granting PI); *Saxena v. Noem*, No. 25-cv-5035, 2025 WL 1413266 (D.S.D. May 15, 2025) (granting PI); *Doe v. Noem*, No. 25-cv-633, 2025 WL 1397007 (W.D. Wash. May 14, 2025); *Doe No. 1 v. Noem*, No. 25-cv-2998, 2025 WL 1348503 (D.N.J. May 8, 2005) (granting PI); *Doe No. 1 v. Trump*, No. 25-cv-4188, 2025 WL 1341711 (N.D. Ill. May 8, 2025) (converting TRO to PI); *Doe 1 v. Bondi*, No. 25—1998, 2025 WL 1482733 (N.D. Ga. May 2,

case. For example, some actions have involved claims against the State Department and/or Secretary of State in addition to DHS and Noem, some were brought as putative class actions, and some concern the termination of SEVIS records and revocation of F-1 status on the basis of something other Section 214.1(g), which permits revocation due to the commission of a "crime of violence." 8 C.F.R. § 214.1(g). However, as a general matter, in the actions concerning DHS's application of Section 214.1(g), courts have agreed that DHS plainly acted in defiance of its statutory and regulatory authority to revoke the plaintiffs' SEVIS records and F-1 statuses for infractions that are not "conviction[s] . . . for [] crime[s] of violence for which a sentence of more than one year imprisonment may be imposed." 8 C.F.R. § 214.1(g); *see, e.g.*, *Du*, 2025 WL 1549098, at *1 (granting preliminary injunction to plaintiffs whose SEVIS records were revoked for criminal activity even though they had no criminal history); *Parra Rodriguez*, 2025 WL 1284722, at *2 (granting preliminary injunction to plaintiff whose SEVIS record was revoked even though the criminal charge was dropped and, thus, there was no "conviction"); *Doe No. 1*, 25-cv-1962, 2025 WL 1582460, at *1 (E.D. Pa. June 4, 2025) (granting TRO where plaintiff's SEVIS record was revoked after he was charged with, but not yet convicted of, a crime).

As explained below, Mohd has satisfied the requirements for this Court to issue the requested preliminary injunction. As to irreparable harm, Mohd has shown that Defendants' termination of his SEVIS record and revocation of his F-1 status resulted in barring Mohd from working and led to the accrual of "out-of-status" time, which could affect his ability to re-apply

---

2025) (PI granted); *Parra Rodriguez v. Noem*, No. 25-cv-616, 2025 WL 1284722 (D. Conn. May 1, 2025) (granting PI); *Chen v. Noem*, No. 25-cv-733, 2025 WL 1163653 (S.D. Ind. Apr. 21, 2025) (granting TRO); *Doe v. Noem*, No. 25-cv-23, 2025 WL 1161386 (W.D. Va. Apr. 21, 2025) (TRO granted); *Ajugwe v. Noem*, No. 25, cv-982, 2025 WL 1148689 (M.D. Fla. Apr. 18, 2025) (TRO granted); *Isserdasani v. Noem*, No. 25-cv-283, 2025 WL 1118626 (W.D. Wis. Apr. 15, 2025) (TRO granted).

for a visa in the future. Furthermore, Defendants' actions exposed him to the threat of removal

proceedings, as well as arrest and detention pending the outcome of any removal proceeding.

Finally, Defendants' actions caused the State Department to revoke Mohd's visa, which means

that he is unable to secure an F-2 derivative visa for is wife and that, if he leaves the United

States to visit his wife, he may not be able to re-enter the country. Defendants' voluntary

reinstatement of Mohd's SEVIS record and F-1 status does not moot Mohd's request for

preliminary relief because Defendants have failed to provide assurances that their conduct is not

reasonably likely to recur and, as shown by the fact that his visa remains revoked, the effects of

Defendants' actions have not been eradicated.

As to a likelihood of success on the merits, at oral argument, Defendants conceded that

they acted in violation of their statutory authority. Likewise, as to the balance of the equities and

the public interest, Defendants concede that these factors weigh in favor of granting a

preliminary injunction.

## I.    Irreparable Harm

Irreparable harm is "the single most important prerequisite for the issuance of a

preliminary injunction." *Faiveley Trans. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir.

2009). The showing of irreparable harm must be "neither remote nor speculative, but actual and

imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the

harm." *Id.* "Where there is an adequate remedy at law, such as an award of money damages,

injunctions are unavailable except in extraordinary circumstances." *Moore v. Consol. Edison Co.*

*of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005).

The party seeking preliminary relief must "demonstrate that irreparable injury is *likely* in

the absence of an injunction." *Winter v. Nat. Resources Def. Council, Inc.*, 555 U.S. 7, 22 (2008)

(emphasis in original). Despite this long-held principle, a defendant's voluntary cessation of the challenged conduct does not "ordinarily render a case moot" because the defendant "could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). Under such circumstances, a preliminary injunction is "effectual relief because it precludes the defendant from reviving the challenged conduct." *Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 815 F.3d 105, 109 (2d Cir. 2016). In such circumstances, the request for injunctive relief is moot only if "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id.*

Here, the record gives rise to a real threat of future revocation of Mohd's SEVIS record and F-1 status, which exposes him to various forms of irreparable harm. Indeed, Mohd already faced irreparable harm as a result of Defendants' termination of Mohd's SEVIS record and revocation of his F-1 status on April 9, 2025, and he would again face the same irreparable harm if Defendants repeated their conduct. Mohd was prohibited from engaging in any employment in the United States while his F-1 status was revoked. (Hr'g Tr. 45:1–7.) As a direct result, Mohd lost his ability to work at his job at Fast Track Electric Corporation and to find new employment, leaving him facing the prospect of being unable to afford shelter, food, and other expenses for himself and his family. (Compl. ¶ 37.) He also accrued ten days of "out-of-status" time and unlawful presence in the United States until Defendants reversed course and reinstated his F-1 status on April 19, 2025. (SEVIS Termination Email (SEVIS record terminated April 9, 2025); Hr'g Tr. 47:25–48:2 (SEVIS record reinstated April 19, 2025).) As other district courts addressing this issue have noted, time spent unlawfully in the United States adversely affects an

individual's ability to receive a new visa in the future. *See Doe No. 1*, 2025 WL 1582460, at *5.

Further, Defendants' actions exposed Mohd to the threats of removal proceedings, arrest and

detention pending the outcome of any removal proceedings, and the obvious mental harm and

fear caused by such threats. *See Doe #1 v. Noem*, No. 25-cv-317, 2025 WL 1555382, at *10

(W.D. Wis. June 2, 2025) (holding that "the mental anguish and fear from the mere threat of

arrest, detention, and deportation is a further irreparable harm that is not speculative"). Finally,

the record before me suggests that the State Department revoked Mohd's F-1 visa *because of*

Defendants' termination of Mohd's F-1 status; his visa remains revoked and Defendants

maintain that his visa revocation is unreviewable. (Hr'g Tr. 23:16–18 ("[DEFENDANTS'

COUNSEL]: . . . . [T]he State Department is the one that actually determines if the visa can be

revoked and that is not reviewable.").) Accordingly, Mohd has met his burden to show

irreparable harm in the absence of a preliminary injunction.

  Defendants' argument that their decision to voluntarily reinstate Mohd's SEVIS record

and F-1 status moots any claim of irreparable harm is unavailing. Defendants fail to show under

the "voluntary cessation" doctrine either (1) that there is no reasonable expectation that the

alleged violation will recur or (2) that interim relief or events have completely and irrevocably

eradicated the effects of the alleged violation, as required for this Court to conclude that the

unexplained restoration of Mohd's SEVIS record at some point in time following the

commencement of this action renders his claims moot. *Am. Freedom Def. Initiative*, 815 F.3d at

109.

  First, the record gives rise to a reasonable expectation that the alleged termination of

Mohd's SEVIS records may indeed recur. In support of their contentions that "[Mohd's] SEVIS

record has been reactivated" and that ICE has "no plans under its new SEVIS policy to re-

terminate [Mohd's] SEVIS record based solely on the NCIC record that let to its initial termination," (Opp'n at 11 (citing Watson Decl. ¶¶ 5–7)), Defendants submit only two factual declarations by employees of ICE and USCIS. (Watson Decl.; Young Decl.) As confirmed by Defendants at the PI Motion hearing, both of these declarations are generic declarations submitted in numerous cases alleging similar fact patterns. (Hr'g Tr. 25:17–10, 52:24–53:7.)[19] They fail to provide any facts specifically addressing Mohd's case or why his SEVIS record/F-1 status was terminated in the first instance, and, accordingly, they fail to demonstrate that there is no reasonable expectation that the challenged conduct will recur. (*Id.*)

While Watson attests that "[b]eginning in March of 2025, ICE reviewed and terminated numerous SEVIS records" before instituting a "new policy," under which "ICE re-activated SEVIS records" and "has no plans . . . to re-terminate" them, Defendants have failed to submit any reliable assurances that ICE will not reengage in the same conduct. (Watson Decl. ¶¶ 4–7.) As other district courts analyzing the same issue have held, Defendants provide no evidence as to (1) what Defendants' prior policy was, pursuant to which Defendants terminated Mohd's SEVIS record and revoked Mohd's F-1 status in April 2025; (2) what process Defendants undertook to develop and implement that prior policy; (3) what, precisely, the "new policy" identified in the Watson Declaration is; or (4) how the new policy differs from the prior policy. *See Doe No. 1*, 2025 WL 1582460, at *6 ("Further, the declaration from Defendants only reflects what Defendants *intend* to do under a *current*, *temporary* policy, with no concrete information on which to rely. . . . This Court cannot decipher what the policy is, when it started, or whether it has been revised, changed, or replaced." (emphasis in original)). The fact that Watson has attested that ICE has "no plans" under its *current* policy to revoke Mohd's visa fails to assure the

---

[19] *See, e.g.*, *Du*, 2025 WL 1549098, at *2; *Parra Rodriguez*, 2025 WL 1284722, at *9.

Court that ICE will not change its policy tomorrow, particularly in light of Defendants' failure to provide *any* information regarding what considerations factored into the decision to implement the policy which resulted in Mohd's SEVIS record revocation in the first place. Moreover, the fact that Watson attests only that "ICE has no plans . . . to re-terminate the plaintiff(s) SEVIS record *based solely on the NICIC record that led to its initial termination*" is telling; Defendants have made no representation that they will *not* act arbitrarily and capriciously to revoke Mohd's SEVIS record on a different unlawful basis in the future. (Watson Decl. ¶ 6 (emphasis added).)[20]

At the PI Motion hearing, Defendants' responses to the Court's questions further confirmed that there remains a reasonable expectation that the challenged conduct will recur. When asked who went through the SEVIS database to identify Mohd and other individuals with F-1 status on the basis of a criminal records check, Defendants' counsel responded, "I believe it was somebody from ICE or USCIS. I don't know who actually did that." (Hr'g Tr. 24:10–12.) Later, when asked to explain the original policy pursuant to which Defendants terminated Mohd's SEVIS record and F-1 status, Defendants' counsel responded, "I don't think there was any specific policy." (*Id.* 26:11–22.) As to the purported new policy, Defendants' counsel represented that her knowledge of the new policy was based solely on the vague Young and Watson Declarations and the general representation that Defendants *presently* had "no intention" of again terminating Mohd's SEVIS record or revoking his F-1 status on the basis of a criminal records check. (*Id.* 27:7–10.) Given that Defendants fail to point, with any degree of specificity, to (1) the prior policy that resulted in the termination of Mohd's SEVIS record and the

---

[20] *See Du*, 2025 WL 1549098, at *6 ("Here, a preliminary injunction should protect Plaintiffs from Defendants re-terminating their SEVIS records in any manner that violates the APA. . . . By contrast, Defendants appear to argue that a preliminary injunction should merely prevent re-termination of Plaintiffs' records on the same narrow basis originally invoked by Defendants.").

revocation of his F-1 status, (2) the process by which Defendants adopted that prior policy, (3) the new policy that purportedly represents that Defendants have "no intention" to again terminate Mohd's SEVIS record or revoke his F-1 status on the same basis, or (4) the process by which Defendants adopted the new policy, this Court is not assured that the challenged conduct is not reasonably likely to recur. In fact, the inability of Defendants to answer the majority of the Court's basic questions during the PI hearing concerning the applicability of the voluntary cessation doctrine to this action is alarming. Defendants' representations during the hearing further underscore that Defendants could change course tomorrow and again terminate Mohd's SEVIS record and F-1 status without legal justification.

On this point, I also note that litigants in other cases addressing the same issue have filed ICE's purported "new policy" on the docket. *See* April 26, 205 SEVIS Policy, *Doe v. Noem*, No. 25-cv-317 (W.D. Wis.), ECF No. 19-12. That policy document specifically states: "If [the Department of] State revokes a nonimmigrant visa effective immediately, SEVP may terminate the nonimmigrant's SEVIS record based on the visa revocation with immediate effect, as such a revocation can serve as a basis of removability under INA § 237(a)(1)(B)." *Id.* Since Mohd's F-1 visa remains revoked, Watson's attestation that ICE has no plans to terminate SEVIS records solely on the narrow basis of a criminal records check pertaining to the specific traffic violation that was the basis for the April 2025 termination fails to assure the Court that ICE will not again terminate Mohd's SEVIS record without complying with DHS regulations while this action remains pending. This concern is further bolstered by public statements made by DHS officials indicating that the decision to restore the SEVIS records of individuals with F-1 status is subject to change. *See* Zach Montague & Hamed Aleaziz, *U.S. Restores Legal Status for Many International Students, but Warns of Removals to Come*, N.Y. Times (Apr. 25, 2025),

https://www.nytimes.com/2025/04/25/us/ politics/trump-student-visa-cancellations.html ("A senior [DHS] official . . . said the students whose legal status was restored on Friday could still very well have it terminated in the future, along with their visas.").

Second, Defendants fail to show "that interim relief or events have *completely* and *irrevocably* eradicated the effects" of the challenged termination of Mohd's SEVIS record and revocation of his F-1 status. *Am. Freedom Def. Initiative*, 815 F.3d at 109 (emphasis added). To the contrary, Mohd maintains that even though Defendants restored his SEVIS record and purport to have made that restoration "retroactive" to the date of termination, he is still suffering from the lasting effects of the termination because his visa was revoked following the termination and remains revoked. As noted by the district court in another case addressing SEVIS record revocation, temporary improper termination of SEVIS records can lead to harms to F-1 status holders' "data hygiene" because, even if the records are restored retroactively, the improper termination "can be disseminated and indexed across the Internet in a manner that is unpredictable and difficult to address." *See Du*, 2025 WL 1549098, at *7. This appears to be exactly what happened to Mohd when Defendants' conduct caused the State Department to revoke Mohd's F-1 visa. His visa remains revoked, meaning that his wife cannot apply for an F-2 visa to visit him in the United States and, if Mohd leaves the United States, he may not be able to re-enter. (Visa Revocation Screenshot.)

On this point, I emphasize that it is not clear that I can issue a preliminary injunction reinstating Mohd's F-1 visa. As Defendants noted, there are questions concerning whether and in what circumstances federal district courts have jurisdiction to enjoin the State Department's decisions regarding visa issuance and revocation. (Hr'g Tr. 23:16–18.) Moreover, the State Department is not a party to this action, and Mohd cites no authority providing a basis for me to

order Defendants in this case (DHS, USCIS, and the directors of those agencies) to take action

with respect to administrative tasks within the State Department's purview. (*Id.* 35:7–9.) I do not

address these issues here, since the preliminary relief sought by Mohd in his Motion does not

include a request for the reinstatement of his F-1 visa and the parties have not provided

submissions rigorously analyzing these issues. (*See* PI Mot. at 2.) With respect to the present PI

Motion, however, it is clear that Mohd's revoked F-1 visa is one continuing effect of

Defendants' conduct that has not been eradicated by Defendants' decision to reverse course, and

it contributes to my finding that Defendants fail to show "that interim relief or events have

*completely* and *irrevocably* eradicated the effects" of their challenged conduct. *Am. Freedom*

*Def. Initiative*, 815 F.3d at 109 (emphasis added). Accordingly, under the "voluntary cessation"

doctrine, Defendants' purported action to change its policy and reinstate Mohd's SEVIS record

does not moot Mohd's claim of irreparable harm.

## II.    Likelihood of Success on the Merits

The APA requires federal agencies to engage in "reasoned decisionmaking" before taking

any action. *Baltimore Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 105 (1983).

When an individual has "suffer[ed] [a] legal wrong" due to a "final agency action," he may seek

judicial review of that action. 5 U.S.C. §§ 702, 704. Relevant here, Section 706(2) authorizes

district courts to "hold unlawful and set aside" agency actions found to be "arbitrary, capricious,

an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).[21]

---

[21] At the PI Motion hearing, Mohd's counsel clarified that Mohd moves for a preliminary
injunction only on the basis of his claim under APA Section 706(2)(A) that Defendants acted
arbitrarily and capriciously to revoke his SEVIS record and terminate his F-1 status. (Hr'g Tr.
20:25–21: 2.) Accordingly, I address Mohd's likelihood of success on the merits of this claim
alone and do not address Mohd's likelihood of success on the merits on his three other APA
claims or his Fifth Amendment due process claim.

Mohd has shown that he has a likelihood of success on the merits of his claim that

Defendants' actions were "arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law" under Section 706(2)(A). Indeed, in their opposition brief, Defendants do

not even attempt to argue that there was a statutory basis for revoking Mohd's SEVIS record.

Further, at the July 1, 2025 hearing on the PI Motion, Defendants *conceded* that they revoked

Mohd's SEVIS record and F-1 status in a manner that was "not in accordance with the law" and,

accordingly, that Mohd is likely to succeed on the merits of his APA Section 706(2)(A) claim.

(Hr'g Tr. 27:11–29:5.)[22] Defendants' concession is consistent with the rulings of numerous

district courts throughout this country, including district courts in this Circuit, granting plaintiffs

temporary restraining orders or preliminary injunctions where Defendants had revoked the

SEVIS records and F-1 statuses of individuals based on arrests (rather than convictions) or

convictions for non-violent infractions (rather than convictions for crimes of violence). *See supra*

note 18.

### III.    Balance of the Equities and Public Interest

Finally, the balance of the equities favors Mohd and the public interest weighs in favor of

granting a preliminary injunction. Here, too, Defendants do not even argue that Mohd has failed

to satisfy these factors, and Defendants' counsel even conceded at the PI Motion hearing that

Defendants do not dispute Mohd's assertion that the public interest favors granting the requested

preliminary relief. (Hr'g Tr. 49:21 – 23 ("So, Your Honor, with regard to public interest, again, I

---

[22] *See* Hr'g Tr. 27:22–25 ("[DEFENDANTS' COUNSEL]: I agree. [Mohd] probably should not
have been terminated and his SEVIS records should not have been terminated for [his traffic
violation]."); *id.* 28:25–29:5 ("THE COURT: So there is factual material here in the record
before me on the PI that the government did not follow its own regulation in terminating Mr.
Mohd's SEVIS. Do you concede that? [DEFENDANTS' COUNSEL]: Your Honor, I believe
that's correct.").

have not briefed that. I'm not prepared to answer that.").) Accordingly, I address both factors below only briefly.

As to the balance of the equities, a preliminary injunction enjoining Defendants from unlawfully revoking Mohd's SEVIS record and F-1 status does not hinder Defendants' ability to lawfully enforce the INA and its implementing regulations while Mohd faces the risk of serious consequences (loss of employment, wages, and post-graduation practical training, loss of lawful status, and potential deportation). This analysis is consistent with other courts' approach to precisely the same question. *See Du*, 2025 WL 1549098, at *9 ("Granting Plaintiffs injunctive relief will 'do nothing' to hinder Defendants' ability to enforce immigration laws or administer SEVP" while "without injunctive relief, Plaintiffs' SEVIS records remain in jeopardy, which threatens their lawful status, their liberty, and their academic and professional opportunities."); *Parra Rodriguez*, 2025 WL 1284722, at *10 (reaching the same conclusion).

As to the public interest, while the "public interest in enforcement of United States immigration laws is significant," *Isserdasani v. Noem*, No. 25-cv-283, 2025 WL 1330188, at *9 (May 7, 2025 W.D. Wisc.), Defendants do not argue that DHS actually complied with those immigration laws in Mohd's case. Again, at the PI Motion hearing, Defendants agreed that their termination of Mohd's SEVIS record was unlawful. (Hr'g Tr. 27:11–29:5.) Similarly, in other litigation raising the same or similar claims, Defendants no longer take the position that DHS complied with immigration laws in terminating SEVIS records and revoking the F-1 statuses of nonimmigrants in April 2025. *See, e.g.*, *Isserdasani*, 2025 WL 1330188, at *4 (finding that the public interest weighed in favor of granting a preliminary injunction where the government "conceded at the hearing that [the nonimmigrant F-1 visa recipient's] SEVIS record was terminated for a subsequently dropped, misdemeanor charge that does not begin to meet the

31

criteria for criminal activity found in 8 C.F.R. § 214.1(g)"); *see also League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("[T]here is generally no public interest in the perpetuation of unlawful agency action.").

## CONCLUSION

For the reasons set forth above, Mohd's Motion for a Preliminary Injunction (ECF No. 2) is granted. During the pendency of this litigation, Defendants are enjoined from:

(1) terminating Mohd's records in the Student and Exchange Visitor Information System ("SEVIS") and revoking his F-1 student status; and

(2) directly or indirectly enforcing, implementing, or otherwise taking any action or imposing any legal consequences—including causing Mohd's visas to be revoked or detaining or removing Mohd from the United States—as a result of that decision.

Dated: Central Islip, New York
     July 28, 2025

             */s/ Nusrat J. Choudhury*
             NUSRAT J. CHOUDHURY
             United States District Judge